Town of Copake v 13 Lackawanna Props., LLC (2019 NY Slip Op 01271)





Town of Copake v 13 Lackawanna Props., LLC


2019 NY Slip Op 01271


Decided on February 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 21, 2019

526006

[*1]TOWN OF COPAKE, Respondent,
v
13 LACKAWANNA PROPERTIES, LLC, et al., Appellants.

Calendar Date: January 11, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Aarons, JJ.


Whiteman Osterman & Hanna LLP, Albany (William S. Nolan of counsel), for appellants.
Whitebeck Benedict & Smith LLP, Hudson (Victor M. Meyers of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Supreme Court (Nichols, J.), entered December 22, 2017 in Columbia County, which denied defendants' motion to purge a contempt order against them.
This case has been the subject of prior appeals (99 AD3d 1061 [2012]; 73 AD3d 1308 [2010]). As a brief background, since 2006, the parties have been engaged in an ongoing dispute regarding defendants' activities in depositing unauthorized materials on their 310-acre farm located in the Town of Copake, Columbia County (hereinafter the property). In June 2009, Supreme Court granted plaintiff's motion to hold defendants in civil and criminal contempt for violating a temporary restraining order, which this Court affirmed (73 AD3d at 1308-1310). This Court also affirmed, with certain modifications, a 2012 Supreme Court judgment which, after a trial, permanently enjoined defendants from dumping solid waste on the property, and directed defendants to complete certain remedial measures, including the removal of approximately 150,000 cubic yards of fill material (99 AD3d at 1062).[FN1]
As pertinent here, in May 2013, plaintiff applied again to hold defendants in contempt for, among other things, depositing new materials on the property. The application was based, in part, on the affidavit of A. Jesse Paluch, an investigator employed by the Department of Environmental Conservation (hereinafter DEC). Paluch observed the dumping of material described as "a load of finely pulverized construction and demolition . . . debris . . . [that] included small pieces of glass, wire, wood chips and the like." During the ensuing hearing in December 2013, Paluch explained that pulverized material was "material that has been mechanically . . . crushed to a point where it's very small, very fine, and can't be readily identified by the naked eye." He elaborated that "[t]he material itself looks just like soil, . . . [b]ut, in fact, it's not." It can include "materials a little larger, like half [an] inch [of] stone or some plastic or some metal or some wire." Paluch confirmed that the material constituted solid waste, the disposal of which is in violation of 6 NYCRR part 360, and estimated that "just under 10,000 cubic yards" had been deposited on the property.
By order dated February 24, 2016, Supreme Court adopted Paluch's description of the material as "pulverized" and "unrecognizable and [nonexempt] material constituting solid waste" and determined that the amount disposed totaled 9,650 cubic yards [FN2]. Supreme Court also determined that the material had been leveled with a bulldozer. As a result, the court found defendants in both criminal and civil contempt of the prior court orders and judgments. For the criminal contempt, the court imposed a 30-day period of incarceration to be served by defendant Salvatore Cascino, together with a $250 fine. For the civil contempt, Supreme Court determined "that the appropriate remedy is that [d]efendants are directed to remove said 9,650 cubic yards of such material from the premises forthwith." The court further ordered Cascino "incarcerated until . . . [d]efendants comply with [the c]ourt's [o]rder." No appeal was taken from this order. Instead, defendants undertook repeated efforts to purge the contempt by endeavoring to remove the disputed material from an area described as a corn field on the property. Cascino was incarcerated on February 24, 2016 and, although he was briefly released from early May 2016 through late August 2016, he remained incarcerated until January 2018, when this Court granted a stay pending defendants' appeal of the December 2017 order now under review. In this order, Supreme Court determined that defendants had failed to purge the contempt by removing all of the disputed material and, therefore, denied defendants' motion for such relief and for Cascino's immediate release. This appeal ensued.
As a threshold point, defendants acknowledge that they did not and do not challenge the February 2016 contempt order. Rather, they challenge Supreme Court's rejection of their efforts to purge the contempt as arbitrary and inequitable — particularly given that Cascino has been incarcerated for 572 days. That said, the nature of the underlying contempt order is pertinent to the resolution of the purge question that we now confront. At the inception of this saga, we explained that, in order to sustain a civil contempt, "it is necessary to establish that a lawful order of the court clearly expressing an unequivocal mandate was in effect" (73 AD3d at 1309 [internal quotation marks and citation omitted; emphasis added]; see Matter of James H., [*2]___ AD3d ___, ___, 91 NYS3d 593, 595-596 [2019]). Under Judiciary Law § 774 (1), when the misconduct consists of the failure to perform a certain act, that act must be "in the power of the offender to perform." To that end, the contempt order "must specify the act or duty to be performed" (Judiciary Law § 774 [1] [emphasis added]). A civil contempt order "must contain three items: (1) a description of the acts which were committed or omitted by the [party] constituting the contempt; (2) a determination of what the [party] should do . . . in order to purge himself [or herself] of the contempt; and (3) an adjudication that the acts done or omitted impaired the rights of a party to the action" (Matter of Loeber v Teresi, 256 AD2d 747, 749 [1998] [internal quotation marks and citation omitted]). "After a finding of contempt has been made, it is the contemnor's burden to demonstrate [by clear and convincing evidence] that he or she has purged the contempt or that it is impossible for him or her to purge" (Riverside Capital Advisers, Inc. v First Secured Capital Corp., 57 AD3d 870, 871 [2008] [citations omitted], lv dismissed 12 NY3d 842 [2009]).
Here, the contempt order merely identifies the amount of disputed material to be removed, 9,650 cubic yards, and the location as "the premises." As the ensuing events demonstrate, this basic description falls short of the required specificity for a contempt order. The record indicates that defendants have removed more than 18,000 cubic yards of material from an area north of the "lone tree" situate in the corn field up to Lackawanna Road, and south of the "lone tree" as much as 20 to 30 yards [FN3]. The removal included the area flagged by DEC in the spring of 2016 [FN4]. Plaintiff maintains that this remediation effort fell short and that additional materials were deposited further south of the "lone tree." In support of their current motion to purge the contempt, defendants included the affidavit of Fred Schneeberger, who worked for Cascino and operated the bulldozer that leveled the disputed material in 2013. Schneeberger stated that the material was dumped around the "lone tree," with the bulk of the material spread north toward Lackawanna Road and east toward Weed Mine Road, and additional material about 20 yards south of the "lone tree." The record also includes competing evidence, including a May [*3]2016 video taken by Jeffrey Nayer, plaintiff's Supervisor, showing trucks dumping material more than 20 yards south of the "lone tree."
As pointed out in plaintiff's appellate brief, a question of fact remains as to whether defendants completed the required remediation. This impasse brings us back to the fundamental problem that the disputed material looks like regular topsoil to the human eye. Despite ongoing removal efforts and Supreme Court having concluded multiple hearings throughout 2016 and 2017 as to the remediation performed, the difficulty of identifying the precise location of any remaining material has left the parties at a continuing impasse.
Given these circumstances, we conclude that to continue Cascino's incarceration any further would serve no viable purpose and cannot be sustained. We are satisfied that the record establishes a significant effort on defendants' part to purge the contempt, while recognizing that there remains some dispute as to whether all the disputed material has been removed. That said, until such time as a definitive showing has been made that the disputed material actually remains and precisely where, it would be improvident to continue Cascino's incarceration. For these reasons, we conclude that the order must be reversed and defendants' motion to purge the contempt granted.
Clark, Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion granted.



Footnotes

Footnote 1: The removal of the 150,000 cubic yards of fill material is not at issue on this appeal.

Footnote 2: The hearing conducted on plaintiff's contempt application concluded on December 11, 2013, with Supreme Court directing the parties to submit proposed findings of fact by January 24, 2014. It is unclear from the record why it took more than two years for the court to issue its decision. To complicate matters, the record indicates that corn was grown on the field in 2014 and 2015, such that the disputed material was further tilled into the soil.

Footnote 3: The record indicates that some 2,000 cubic yards were removed by May 2016, another 8,250 cubic yards were removed between June 6, 2016 and September 21, 2016, almost 8,000 cubic yards were removed directly after representatives of the parties met on site on June 26, 2017, and an additional 1,000 cubic yards were removed in September 2017.

Footnote 4: The record includes an April 28, 2016 letter from DEC to Supreme Court advising that DEC staff met with defendants' representatives on the site "regarding the location, protocol and disposal options for removal of the 9,650 cubic yards of solid waste that this Court ordered removed in its February 25, 2016 order. Through counsel, DEC provided specifications to
. . . defendants (which were forwarded to counsel for [plaintiff on April 27] at his request) on the location and means of removal of the waste from a wetland area." During the May 4, 2016 hearing, the court explained that the contempt order "was chiefly based on the testimony of . . . Paluch" and that, accordingly, DEC "clearly" has "knowledge of the location of the material." For reasons not clear, at the May 18, 2017 hearing, the court inconsistently commented that "there's been no evidence that . . . DEC actually flagged the 9,650 cubic yards that [it] ordered to be removed."